IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:11CR584 |
| | ) | Hon. James C. Cacheris |
| MELVIN ERALDO RAMIREZ | ) | Sent. Date: May 25, 2012 |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S POSITION ON SENTENCING FACTORS

Pursuant to Title 18 U.S.C. § 3553(a), Federal Rule of Criminal Procedure 32, and Section 6A1.3 of the *United States Sentencing Guidelines*, the Defendant, Melvin Eraldo Ramirez, by and through his attorney, states that he has received and reviewed the Presentence Report ("PSR") prepared in this case as well as the Addendum. Mr. Ramirez has no factual corrections to make to the PSR but does object to the PSR guidelines calculation for the reasons set forth below. Mr. Ramirez respectfully requests that this court impose a sentence of no more than thirty-seven months which is an appropriate sentence under 18 U.S.C. § 3553(a).

### BACKGROUND

On February 23, 2012, Mr. Ramirez pleaded guilty straight up to Count 1 of his indictment, admitting his guilt to Illegal Reentry by a Removed Alien, in violation of 8 U.S.C. §1326(a) and (b). This Court continued sentencing to May 25, 2012, for the preparation of a PSR. Mr. Ramirez has been held in custody on this charge since December 27, 2011, and he has been in custody because of his immigration status since at least November 13, 2011, since he was first taken into custody by an agent from ICE.

## ARGUMENT

### I. THE APPLICABLE LAW

In two recent summary reversals, the Supreme Court stated in no uncertain terms that the guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon conviction of the statutory sentencing factors spelled out in 18 U.S.C. § 3553(a). *Nelson v. United States*, 129 S. Ct. 890 (2009); *Spears v. United States*, 129 S.Ct. 840 (2009). The Court's decisions in *Nelson* and *Spears* build upon its earlier decisions in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Gall v. United States*, 128 S. Ct. 586 (2007), establishing that the sentencing guidelines are simply an advisory tool to be considered alongside the other § 3553(a) statutory considerations.

"Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson*. 129 S. Ct., at 892. "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id*. (emphasis in original). In other words, sentencing courts commit legal error by using a sentencing guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. *See also United States v. Johnson*, 553 F.3d 990, 996 (6th Cir. 2009) ("[I]t is clear that *Spears* applies with equal force to sentencing decisions under the new crack-cocaine Guidelines and that district courts may categorically reject and vary from the new Guidelines based on policy disagreements with those Guidelines.").

While sentencing courts must continue to *consider* the sentencing guidelines, Congress has *required* federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b)

the kinds of sentences available; (c) the advisory guidelines range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a); *see also Kimbrough*, 128 S. Ct. at 570. The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision."  This requirement is not just another factor to be considered along with the others set forth in section 3553(a) — it sets an independent limit upon the sentence.

Upon consideration of those factors, a sentencing court may find that a particular case falls outside the "heartland" contemplated by the guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007) (emphasis added). While the Court must begin its analysis by correctly calculating the advisory sentencing range, the sentencing court is then free in light of the other statutory sentencing factors to impose an entirely different sentence.  This is because, under *Rita,* a district court is free simply to disagree, based on the § 3553(a) sentencing factors, with the U.S.S.G.'s "rough approximation" of the appropriate sentence for any given case.  *Id.*

II.     **THE APPROPRIATE SENTENCE PURSUANT TO 18 U.S.C. § 3553(a)**

Mr. Ramirez submits that a sentence of not more than thirty-seven months satisfies the purposes of the statute and meet the requirements of the statute, regardless of the position of the advisory sentencing guidelines.

A.      Origin of U.S.S.G. § 2L1.2

The Guidelines at issue in this case provide a base offense level of 8, plus a specific offense characteristic enhancement that varies based upon the type of crime committed by the defendant prior to his deportation. *See* U.S.S.G. § 2L1.2. Section 2L1.2(b)(1) provides four levels of potential enhancement: a 16-level enhancement for the most severe crimes; a 12-level enhancement for drug trafficking offenses for which the sentence imposed was 13 months or less; an 8-level enhancement for "aggravated felonies" as that term is defined at 8 U.S.C. § 1101(a)(43); and a 4-level enhancement for "any other felony" or three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses. Recognizing that there is some overlap in these categories (e.g., drug trafficking offenses subject to a 16-level enhancement are also "aggravated felonies" under 8 U.S.C. § 1101(a)(43)), the Guidelines provides that the greatest applicable enhancement should be used. *See* U.S.S.G. § 2L1.2(b)(1).

The 16-level enhancement contained at § 2L1.2(b)(1) originated in the November 1, 1991 version of the Guidelines, which provided a 16-level enhancement for defendants previously deported after conviction for an "aggravated felony" and a 4-level enhancement for defendants previously deported for any other felony.[1] The Sentencing Commission stated in its Reason for Amendment only that it had "determined that these increased offense levels are appropriate to reflect the serious nature of these offenses." Reason for Amendment, U.S.S.G. Amend. 375 (Nov. 1, 1991).

---

[1] The November 1, 1989 and November 1, 1990 versions of the Guidelines contained a 4-level increase for defendants previously deported after being convicted of "a felony."

The 16-level/4-level hierarchy remained in effect until the enactment of the November 1, 2001 Guidelines, when § 2L1.2(b)(1) was amended to provide the four levels of enhancement contained in the current version of the Guidelines. In explaining its decision to provide more graduated offense levels, the Commission stated:

> This amendment responds to concerns raised by a number of judges, probation officers, and defense attorneys, . . . that §2L1.2 . . . . sometimes results in disproportionate penalties because of the 16-level enhancement provided in the guideline for a prior conviction for an aggravated felony. The disproportionate penalties result because the breadth of the definition of "aggravated felony" provided in 8 U.S.C. § 1101(a)(43), which is incorporated into the guideline by reference, means that a defendant who previously was convicted of murder, for example, receives the same 16-level enhancement as a defendant previously convicted of simple assault. . . .
>
> This amendment responds to these concerns by providing a more graduated sentencing enhancement of between 8 levels and 16 levels, depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant.

Reason for Amendment, U.S.S.G. Amend. 632 (Nov. 1, 2001). This explanation demonstrates that the Commission intended with the November 1, 2001, amendment to provide a sentencing regime that ensured that the most dangerous defendants, who had committed the most serious crimes, received the highest sentences for violations of 8 U.S.C. § 1326.

The Guidelines now provide a 16-level enhancement for defendants who have previously been deported after being convicted of any of the following crimes: (I) a drug trafficking offense for which the sentence imposed exceeded 13 months, (ii) a firearms offense, (iii) a child pornography offense, (iv) a national security or terrorism offense, (v) an alien smuggling offense, or (vi) a "crime of violence." The Guidelines define "crime of violence" to include murder,

manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, arson, extortion, extortionate extension of credit, and, of relevance to Mr. Ramirez's case, a malicious wounding conviction, for which a two year sentence of active incarceration was imposed. As will be explained below, sentencing Mr. Ramirez consistent with this enhancement is not appropriate because a sentence within the range provided as a result of the 16-level enhancement is far greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553.

> B. A Sentence within the Guidelines Range is Greater than Necessary to Satisfy the Purposes of Sentencing Set Forth in 18 U.S.C. § 3553(a)
>
>> 1. The 16-Level Enhancement Contained in Section 2L1.2 is Unreasonable
>>
>>> a. *The Sentencing Commission Did Not Rely Upon Empirical Evidence in Enacting the 16-Level Enhancement*

In this case, a within-Guidelines sentence is both unwarranted in light of the sentencing factors set forth in 18 U.S.C. § 3553(a) and greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2). The Commission did not premise its adoption of the 16-level enhancement on empirical data or national experience, and there is no evidence that the Commission took the § 3553(a) factors into account in promulgating the 16-level enhancement.

Congress established the Sentencing Commission in 1984, and directed it to establish sentencing policies and practices that would "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2);" "provide certainty and fairness in meeting the purposes of sentencing [and] avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct;" and "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice

process." 28 U.S.C. § 991(b). In enacting the Sentencing Guidelines, the Commission carried out that mission by analyzing more than 10,000 presentence investigations and data from nearly 100,000 federal convictions during a two-year period. *See* United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* (1987), at 16, available at http://www.fd.org/pdf_lib/Supplementary%20Report.pdf. From this data, the Commission ascertained "the average sentences imposed in [various] categories of cases prior to the creation of the Commission" and "independently develop[ed] sentencing range[s] consistent with the purposes of sentencing described in section 3553(a)(2) . . . ." 28 U.S.C. § 994(m). It was during this initial period of analysis that the Commission assigned a base offense level of 6 (soon increased to 8) to illegal reentry offenses. *See* U.S.S.G. § 2L1.2 (Nov. 1, 1987); § 2L1.2 (Jan. 15, 1988).

Congress also directed the Commission to "periodically . . . review and revise, in consideration of comments and data coming to its attention, the guidelines . . . ." 28 U.S.C. § 994(o). In so updating the Guidelines, Congress instructed, the Commission should "consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system." *Id.*

The empirical process behind the enactment of the Guidelines (and the updates thereto) is the reason that, even in the post-*Booker* environment, sentencing courts must start their sentencing analysis with a correct calculation of the Guidelines sentence. While a sentencing court may not presume that a within-Guidelines sentence is reasonable, *see Nelson*, 129 S. Ct. at 892, the Supreme Court has held that an *appellate* court may generally apply a presumption of reasonableness to a within-Guidelines sentence, *see Rita*, 551 U.S. at 347. The Supreme Court's

allowance of such a presumption is premised entirely on the assumption that the Commission has carried out its duty to utilize empirical evidence and its analysis of the § 3553(a) factors in assigning recommended sentences to certain offenses. *See id.* at 348, 350 (noting that the result of the Commission's carrying out its statutory duty is "a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice" and that "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale").

As a corollary to this supposition, the Supreme Court has recognized that where the Commission fails to fulfill its role by premising a guideline on considerations other than empirical evidence and the § 3553(a) factors, the sentencing court may be inclined to rely less heavily on the Guidelines. The Supreme Court's decision in *Kimbrough*, which held that sentencing judges may disregard the Guidelines' sentencing recommendations for crack cocaine offenses based on their disagreement with the crack/cocaine sentencing disparity contained in the Guidelines, was motivated by the Commission's failure to utilize empirical evidence in enacting the crack cocaine sentencing guidelines. *See Kimbrough*, 552 U.S. at 109-10 (holding that where Guidelines are not the product of "empirical data and national experience," it is not an abuse of discretion for a sentencing court to conclude that the recommended sentence fails to achieve the purposes of sentencing set forth in Section 3553(a), even in "a mine-run case"); *Gall*, 552 U.S. at 46 n.2 ("Notably, not all of the Guidelines are tied to this empirical evidence.") (citing *Kimbrough*, 552 U.S. 85).

The 16-level enhancement contained in Section 2L1.2 was not supported by empirical evidence, and there is no indication that the Commission considered the Section 3553(a) factors

in enacting it. It appears that the 16-level enhancement found its way into the 1991 amendments based upon the impromptu suggestion of a single Commissioner. In *United States v. Galvez-Barrios*, the court quoted the following passage from an article in the Federal Sentencing Reporter in imposing a sentence forty percent below the low end of the Guidelines range:

> The Commission did no study to determine if [the sentences that result from Section 2L1.2's 16-level enhancement] were necessary – or desirable from any penal theory. Indeed, no research supports such a drastic upheaval. No Commission studies recommended such a high level, nor did any other known grounds warrant it. [One commissioner] suggested the 16-level increase and the Commission passed it with relatively little discussion. The 16-level increase, therefore, is a guideline anomaly – an anomaly with dire consequences.

355 F. Supp. 2d 958, 962 (E.D. Wis. 2005) (quoting Robert J. McWhirter & Jon M. Sands, *Does the Punishment Fit the Crime? A Defense Perspective on Sentencing in Aggravated Felon Reentry Cases*, 8 FED. SENT. REP. 275, 276 (Mar./Apr. 1996)).

The severity of the 16-level increase regularly yields Guidelines ranges for reentry defendants that are four years longer than they would be under the base offense level of 8. By generating an offense level of 24, the increase results in offense levels that are the same or nearly the same as those that apply to offenses that are self-evidently of far greater seriousness. These include sex trafficking of children, *see* U.S.S.G. § 2G1.3(a)(4) (base offense level 24); bombing an airport or mass transit facility, *see* U.S.S.G. § 2K1.4(a)(1) (base offense level 24); and robbery with a dangerous weapon causing serious bodily injury, *see* U.S.S.G. § 2B3.1(a), (b)(3)(B) (base offense level 24). The offense level yielded by the 16-level increase is, in fact, higher than the levels assigned to the crime of inciting a prison riot with substantial risk of death (level 22), *see* U.S.S.G. § 2P1.3; and reckless manslaughter (level 18), *see* U.S.S.G. § 2A1.4(a)(2)(A). As a

result, the Sentencing Commission, through these offense levels, asks sentencing courts to conclude that a purely administrative, non-violent violation, entry without authorization of a United States official, poses a greater threat than approximately three-fourths of the offenses addressed by federal criminal law.

Courts have pointed to the 16-level enhancement's lack of empirical support and undue harshness in sentencing defendants to below-Guidelines sentences in illegal reentry cases. *See, e.g., United States v. Galvez-Barrios*, 355 F. Supp. 2d 958, 964 (E.D. Wis. 2005) (observing that "the 16 level enhancement was excessive because it was based on (and double counted) a prior conviction that did not reflect the degree of dangerousness that could justify such a dramatic increase"); *United States v. Zapata-Treviño*, 378 F. Supp. 2d 1321, 1325 (D.N.M. 2005) ("Because the Guidelines do not distinguish between crimes of violence that are more serious and those that are less serious, in the case of a less serious crime, courts have been critical of applying the mandatory sixteen-level enhancement"); *United States v. Santos*, 406 F. Supp. 2d 320, 328 (S.D.N.Y. 2005) (sentencing illegal reentry defendant thirty-three months below the low end of the "unreasonably harsh" Guidelines range).

In addition, criminal justice professionals have called for the amendment of Section 2L1.2 to reduce its inexplicable severity. At a Sentencing Commission hearing in 2006, a number of federal judges and probation officers expressed concerns that the provision paints with too broad a brush. *See* United States Sentencing Commission, Transcript of Public Hearing (San Diego, CA, Mar. 6, 2006) at 22-23, 36-39, 45-46, 54-58, and 146-47.[2] The witnesses offered

---

[2] The transcript is available at http://www.ussc.gov/hearings/03_06_06/USSCtranscript-SanDiego.pdf.

examples of disproportionate sentences caused by the 16-level increase and identified practical considerations calling for the amelioration of its severity. *See, e.g., id.* at 37 ("In my experience, in too many cases the 16-level adjustment for illegal reentry does not fulfill the sentencing goals set forth in 3553.") (Vazquez, C.J., D.N.M.). At least one Commissioner has acknowledged the Guideline's infirmities and spoken in favor of a reform proposal submitted by defense attorneys. *See id.* at 22-23, 75. In sum, the 16-level enhancement is not based on empirical evidence and overstates the severity of the offense conduct. As such, the advisory Guidelines range in this case should be disregarded as failing to achieve the purposes of sentencing set forth in § 3553(a).

      b.      *Uniform Application of the 16-Level Enhancement Results in Unwarranted Similarities in Sentences Amongst Reentry Defendants*

Uniform application of the 16-level enhancement contained in Section 2L1.2 results in unwarranted sentencing similarities that are antithetical to the goals of fair sentencing contained in Section 3553(a). With regard to defendants like Mr. Ramirez, who are raised in this country and return for purposes of reuniting with family and seeking employment, the application of the 16-level enhancement is much too harsh. The 16-level enhancement is applied to murderers, rapists, and human traffickers. As evidenced by its explanation of the 2001 amendment and by the specific crimes to which it has assigned the 16-level enhancement, the Commission intended the 16-level enhancement contained in § 2L1.2(b)(1) to apply to the most violent and dangerous defendants.

In this case, the Guidelines result in a 16-level enhancement because Mr. Ramirez pleaded guilty to malicious wounding in 2006 when he was twenty-five years old. PSR ¶¶ 37. Notably, he received a two year active sentence on that charge. Additionally, Mr. Ramirez

continued to have a friendly relationship with the victim of that crime, the mother of two of his children, and until his arrest he had regular contact with and supported those same kids. ¶ 62. That the Guidelines treat Mr. Ramirez the same as a convicted murderer or rapist for the crime of reentry is unreasonable given his criminal history and for all of the reasons discussed below in Section II.B.3.

### 2. The Guidelines Range Suffers from Double Counting

The Guidelines range that results from the application of 2L1.2 has also been criticized for "double counting" defendants' prior criminal histories. In this case, the same attempted robbery conviction (PSR ¶ 37) that is used to increase Mr. Ramirez's criminal history category is also used to increase his offense level 16 points under U.S.S.G. § 2L1.2(b)(1)(A). This "double counting" marks a notable exception to the Guidelines' usual approach and has been found to warrant downward variances. *See Galvez-Barrios*, 355 F. Supp. 2d at 963 ("Although it is sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis."); *Zapata-Treviño*, 378 F. Supp. 2d at 1327-28 (premising its imposition of a non-Guidelines sentence in part on the double-counting of the defendant's criminal history); *Santos*, 406 F. Supp. 2d at 328 (reducing the defendant's offense level in part because of "the double-counting of prior criminal conduct").

Mr. Ramirez's criminal history is more than adequately accounted for by the guidelines upon consideration of his criminal history as a Category IV. To illustrate, if the prior record were counted against Mr. Ramirez for purposes of calculating the base offense level, but not for his criminal history (Offense Level: 21, Criminal History: I) the guidelines recommendation would be 37-46 months. If the prior criminal record were counted against Mr. Ramirez for purposes of

calculating his criminal history, but not his base offense level as an "aggravated felon" (Offense Level: 6, Criminal History: IV), his guidelines recommendation would be 12-18 months. In either circumstance, the guidelines recommendation falls below the bottom end of his current guidelines, however, the severity of Mr. Ramirez's prior convictions are still accounted for. A sentence below the guidelines, therefore, will still account for the prior convictions and comprise a sufficient punishment.

   3. A Sentence No Greater than 37 Months is Sufficient to Satisfy the Statutory Purposes of Sentencing Under 18 U.S.C. § 3553(a)

   a. *Defendant's Background and Character*

Mr. Ramirez has been convicted of illegal reentry. While Mr. Ramirez does not deny that this is a serious offense, it overstates the severity of his crime and his criminal record to impose a sentence that would be vastly longer than any sentence he has received for any prior conduct. The guidelines are a benchmark for the Court in determining a sentence, however, it is 18 U.S.C. 3553 that dictates what the Court must consider in imposing sentence. For this Court to use the guidelines as a starting point, and then impose a sentence of not more than thirty-seven (37) months, based on the factors under 18 U.S.C. 3553 would be consistent with the goals of the statute.

Mr. Ramirez's prior criminal record, while substantial, is certainly not among the highest that one could easily contemplate, even though he is categorized at a criminal history category VI. His criminal history does not include a single offense for which he served more than two years of incarceration, whereas a person with multiple murder convictions, terrorism convictions, robberies, etc., would not have any higher criminal history category. Mr. Ramirez therefore does

not deserve to receive a sentence in what is the highest possible range of sentences available under the guidelines for illegal reentry following acceptance of responsibility. Such an outcome is simply not rational.

Mr. Ramirez has been in immigration custody since November, 2011, approximately a month before he was charged with this crime, for which he has now served an additional five months. A sentence of not more than thirty-seven months sends the message that illegal reentry is a serious offense without being a sentence so long as to significantly overstate the seriousness of the underlying offense.

        b.    *The Seriousness of the Crime*

Mr. Ramirez has been convicted of illegal reentry. A sentence of thirty-seven months is a just punishment and a sufficient deterrent for Mr. Ramirez and others, especially in conjunction with the additional time he will be held in immigration custody awaiting removal. While time spent in the custody of the Bureau of Immigration and Customs Enforcement is not a punishment for this offense, this Court can consider the deterrent effect that further incarceration will have on Mr. Ramirez. He has been held for approximately five months on this charge and will almost certainly continue to be held, regardless of the sentence imposed by the Court.

The seriousness of the offense has been made extremely clear to Mr. Ramirez. He knows that a return to this country is not a possibility for him, though a return to El Salvador likely poses great risk for him as well. (See PSR and attached letter and exhibit from his mother). Mr. Ramirez returned to this country after being attacked in El Salvador. As made clear in the PSR and the attached letters, many of the males of Mr. Ramirez's family have been the victims of violence, and some have been killed. Mr. Ramirez's entire family now lives in the United States,

and he is a stranger in the country in which he was born. He was brought to the United States as a child, and he spent the majority of his life here. Therefore, he has now made arrangements to attempt to live in Guatemala (where is fiancee and the mother of one of his children is from). (See attached letter from Ms. Lopez).

Thirty-seven months in prison is vastly different than a sentence of probation, intermittent confinement or home confinement. Rather, it is a period of time that Mr. Ramirez, and others similarly situated, will be incarcerated in a jail or prison. In the unlikely event that Mr. Ramirez is ever placed in a similar situation, this multiple month sentence will certainly resonate and remind him of the consequences of returning to this country illegally.

Furthermore, a sentence of not more than thirty-seven months is a sufficient deterrent to the public. A defendant might well consider sneaking into the country after removal to be a minor transgression at the time it is made; however, the risk of months of imprisonment is not one that a member of the general public would take lightly.

## CONCLUSION

Accordingly, for the reasons listed above, and in light of the factors outlined by Section 3553(a), including the nature and circumstances of the offense and the character of Mr. Ramirez, his decision to plead guilty and his acceptance of responsibility, he respectfully requests that this Court sentence him to a term of imprisonment of no more than thirty-seven months. Finally, Mr. Ramirez prays this Court find that he is unable to pay a fine and not impose any fine.

Respectfully submitted,

Melvin Eraldo Ramirez

_____/s/_____
W. Todd Watson, Esquire
Attorney for Defendant
Virginia Bar No. 38527
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA  22314
(703)600-0878 (telephone)
(703)600-0880 (facsimile)
Todd_Watson@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on the May 23, 2012, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> SAUSA C. Alexandria Bogle, Esquire
> United States Attorney's Office
> 2100 Jamieson Avenue
> Alexandria, VA  22314

A copy of the foregoing pleading will also be delivered to:

> William C. Byerley, Jr.
> U.S. Probation Officer
> 401 Courthouse Square
> Alexandria, VA 22314

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

_____/s/_____
W. Todd Watson, Esquire
Attorney for Defendant
Virginia Bar No.38527
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA  22314
(703)600-0878 (telephone)
(703)600-0880 (facsimile)
Todd_Watson@fd.org